<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY</u>

|  |  |
|---|---|
| RONALD HOLLINGSWORTH, : <br> : <br> Plaintiff, : <br> : Civil Action No. 06-571 (JAG) <br> v. : <br> : **OPINION** <br> PORT AUTHORITY OF NEW YORK : <br> AND NEW JERSEY, a body corporate and : <br> politic, HOWARD COHEN, individually, : <br> VIRON THOMAS, individually, : <br> TROY MOSBY, individually, : <br> STEVE NAPATANO, individually, : <br> and ROBERT DURANDO, individually, : <br> : <br> Defendants. : | |

**<u>GREENAWAY, JR., U.S.D.J.</u>**

This matter comes before this Court on the motion of defendants, Port Authority of New York and New Jersey ("Port Authority"), and the individual defendants[1] (collectively, "Defendants"), for summary judgment, pursuant to FED. R. CIV. P. 56, against plaintiff, Ronald Hollingsworth ("Plaintiff" or "Hollingsworth"). For the reasons set forth below, Defendants' motion is granted in part, and denied in part.

---

[1] Plaintiff names "Steve Napatano" and "Viron Thomas" as individual defendants in his Complaint. According to Defendants, however, "Steve Napolitano" and "Byron Thomas" are the correct names of those individuals. (Defendants' Statement of Material Facts ("Def. 56.1 Stmt."), ¶ 6.)

## I.  FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.  Plaintiff, Ronald Hollingsworth, was employed by the Port Authority as a Tunnel and Bridge Agent ("TBA"), from 1974 to 2007.  (Def. 56.1. Stmt. ¶3; Plaintiff's Response to Defendant's Statement of Material Facts ("Pl. Response"), ¶ 3.)  Plaintiff began working at the George Washington Bridge in 1985, and was generally responsible for responding to emergencies, administering first aid and CPR, fighting fires, and handling vehicular accidents and breakdowns.  (Def. 56.1 Stmt. ¶ 4; Pl. Response ¶ 4.)

According to Plaintiff, while employed by the Port Authority he was subjected to various comments, pranks and physical attacks.  (See Plaintiff's Statement of Material Facts ("Pl. 56.1 Stmt."), ¶¶ 5, 6a, 7, 10a, 11, 14a.)  Specifically, Plaintiff recalled that another Port Authority employee referred to plaintiff as a "dinosaur"  (id., ¶ 5.) , and that his locker had been vandalized (Id., ¶ 6a, 11).  Plaintiff also contends that on November 24, 1997, a Port Authority employee physically attacked Plaintiff, causing damage to Plaintiff's spine and forcing Plaintiff to take an unpaid leave from work for sixteen (16) months.  (Id., ¶¶ 10a, 10b.)  Finally, Plaintiff asserts that he was verbally attacked by a Port Authority employee, "causing physical manifestations which caused [P]laintiff to be transported to Englewood Hospital with symptoms relating to his heart.  Plaintiff was referred to a cardiologist and no abnormalities were reported to [P]laintiff at the time.  He was referred to a gastroenterologist and no abnormalities were reported to [P]laintiff."  (Id., ¶ 14a.)

In his submissions, however, Plaintiff never expounds on the substance or subject of these verbal attacks.  Plaintiff asserts that he reported the abusive behavior to the named

individual defendants and others, without response.  (Id., ¶¶ 9, 17b.)

Plaintiff commenced the instant action on January 18, 2006, filing a complaint ("the Complaint"), against the Port Authority and several individual defendants, in the Superior Court of New Jersey, Law Division–Hudson County.  The Complaint alleges age and disability discrimination, in violation of the NJLAD, intentional infliction of emotional distress, and tortious interference with prospective economic advantage.  On April 24, 2008, Defendants filed a Notice of Removal with this Court, asserting federal district court jurisdiction, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441.  The action was removed to this Court and, after a period of discovery,  Defendants moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2]

## II.  JURISDICTION

"The Port Authority was created in 1921 by a Compact between New York and New Jersey, which was consented to by Congress.  The goal of the Compact is to develop public transportation, terminals and other facilities of commerce within the Port of New York District." King v. Port Auth. Of N.Y. & N.J., 909 F. Supp. 938, 943 n.4 (D.N.J. 1995), aff'd 106 F.3d 385 (3d Cir. 1996)

Prior to 1950, the "Port Authority, as an agency of the states of New York and New Jersey, enjoyed complete sovereign immunity from suits of any sort in the courts of those states."

---

[2]This Court must acknowledge the failure of both parties to provide clear, cohesive submissions in this matter.  "Judges are not like pigs, hunting for truffles buried in the record." Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (internal quotation omitted).  By failing to include correct citations to case law and exhibits, amongst other mistakes, the parties have forced this Court to embark, at times, on a wild goose chase, in ferreting out the facts relevant to this motion.

Brooklyn Bridge Park Coal. v. Port Auth. of N.Y. & N. J., 951 F. Supp. 383, 387 (E.D.N.Y. 1997); Port of N.Y. Auth. v. Weehawken Tp., 99 A.2d 377, 379 (N.J. Super. Ct. Ch. Div. 1953), rev'd on other grounds, 103 A.2d 603 (N.J. 1954).

During the 1950s, however, both states enacted legislation waiving the Port Authority's sovereign immunity, and granting consent to suits against the agency. N.J. Stat. Ann. § 32:1-157; N.Y. Unconsol. Laws § 6688 et seq.; see Port Auth. of N.Y. & N. J. v. Ingram, 557 A.2d 337, 339 (N.J. Super. Ct. App. Div. 1989).[3] " 'Venue' for actions against the Port Authority consented to by this legislation, which include actions sounding in tort, expressly includes the federal courts." Feeney v. Port Authority Trans-Hudson Corp., 873 F.2d 628, 632 (3d Cir. 1989); aff'd 495 U.S. 299 (1990) (holding that New York and New Jersey had consented to suits against the Port Authority Trans-Hudson Corp., a wholly owned subsidiary of the Port Authority, in federal district court).

Thus, the instant action is properly before this Court, a federal district court in the District of New Jersey.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c), when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23; Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury

---

[3] The relevant statutory portions provide that "venue in any suit, action or proceeding against the [P]ort [A]uthority shall be laid within a county or a judicial district, established by one of said states or by the United States, and situated wholly or partially within the port of New York district." N. J. Stat. Ann. § 32:1-162; N. Y. Unconsol. Laws § 7106.

could return a verdict for the non-movant, and is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).  This Court views "the facts in the light most favorable to the nonmoving party and draw[s] all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  (emphasis in original) (internal citations omitted)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v.

Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

## IV. DISCUSSION

### A. Age and Disability Discrimination Under the NJLAD

*I.    Statute of Limitations*

Defendants seek summary judgment on each of Plaintiff's discrimination claims, pursuant to the NJLAD. Defendants assert that Plaintiff's age and disability discrimination claims are time-barred. This Court agrees.

Claims arising under the New Jersey Law Against Discrimination are subject to a two-year statute of limitations. Montells v. Haynes, 627 A.2d 654, 655 (N.J. 1993) ("Finding that injuries under [NJ]LAD are most like personal-injury claims, we further conclude that the two-year personal-injury statute of limitations should apply."); see N.J. Stat. Ann. § 10:5-1. New Jersey recognizes, however, the continuing violation doctrine. That is, when an individual is subject to a "continual, cumulative pattern of tortious conduct," the limitations period does not begin to run until the wrongful action ceases. Wilson v. Wal-Mart Stores, 729 A.2d 1006, 1010 (N.J. 1999). Thus, under the continuing violation doctrine, a plaintiff "may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part

of a pattern and at least one of those acts occurred within the statutory limitations period." Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 614 (N.J. 2002) (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995)).  The doctrine, however, does not apply to NJLAD claims unless plaintiff proves that "the defendant's conduct is more than the occurrence of isolated or sporadic acts."  See West, 45 F.3d at 755 (citing Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir.), cert. denied, 454 U.S. 969 (1981)).  "The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern."  Id.

In his Complaint, Plaintiff alleges that "during the course of [his] employment [Defendants] did conduct repeated personal attacks upon the plaintiff including physical and mental abuse," and that such conduct constituted age and disability discrimination, in violation of the NJLAD.  (Compl. Count I, ¶¶ 6, 8; Count II, ¶5.)  On its face, the Complaint alludes to Plaintiff's intent to use the continuing violation doctrine to assert a claim for discrimination.  A review of the record, however, reveals that there is no factual showing that Plaintiff endured at least one act of age or disability discrimination within the applicable statute of limitations period, December 2003 to December 2005.  As is true of his Complaint, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp. Br.") is devoid of any dates specifying the alleged discrimination.  Similarly, neither Plaintiff's narrative[4] (attached as Exhibit I to Plaintiff's brief), nor his August 23, 2005 letter complaint to the EEOC (attached as Exhibit G),

---

[4]The above-referenced exhibit, entitled "Narrative–Ronald Hollingsworth," is an undated document, and is without reference to intended audience or purpose.

7

make a single reference to age or disability discrimination.[5] In fact, the only

---

[5]Hollingsworth's narrative chronicles incidents which are clearly time-barred, as they occurred between 1997 and 1998. Moreover, the narrative only alleges physical attacks to his person, perpetrated by fellow Port Authority employees, not acts of age or disability discrimination. Plaintiff's statements, as proffered in the EEOC grievance, likewise fail to mention any form of discrimination. Those statements that are timely for purposes of this statute of limitations discussion (post-December 2003), are entirely as follows:

| | |
|---|---|
| 6/24/04: | 06:45 AM TBA H. Cohen called me a "mother fucking asshole" for no reason in front of witnesses. I was not speaking to him or addressing him in any way. This was witnessed by Senior TBA Ritchie Johnson, Senior TBA Gomez, and TBA Gary Magda. |
| 7/13/04: | I was verbally assaulted by TBA H. Cohen with foul comments for no reason. I used my radio to transmit his insults. I asked that management to (sic) release the recorded radio tape to my lawyer for use in a legal action. This fell upon deaf ears. This episode was reported to Supervisor 65 Anthony Noa. |
| 7/22/04: | When I entered the mail room, Ms. Paula Turner was in process of putting mail into the boxes. I opened up some of my letters. Ms. Turner saw unsolicited sexually explicit material that I was receiving from unknown sources on a regular basis. |
| August 2004: | I reported to Supervisor 65 Anthony Noa that I find it difficult to function and perform my job due to all the verbal attacks which has (sic) affected my health and that I can no longer take the tortuous abuse and, that pursuant to the "united (sic) Nations" UNIVERSAL DECLARATION OF HUMAN RIGHTS, Article 5, I do not have to live under these conditions. |
| 10/7/04: | At 10:33 AM I was working on the updated roll call while Lt. Borawski was waiting for it to be completed. TBA Yaccarino came up to the desk and stated, "You're on your break." I told him that I was assisting Lt. Borawski and that I would start my break in a few minutes. After a short time, Yaccarino came up to the desk and said that I had only 29 minutes left of my 45 minutes break. Basically, he docked me the time I was assisting the Lieutenant. All other desk men get an hour break. I have been singled out and afforded only a 45 minute break. This is another example of the situation for me at GWB. So on my break, I contacted TBA Purello, my union rep, and we went to speak to Olga Krueger, the |

arguably discriminatory acts detailed in the record are comments by two Port Authority employees who allegedly referred to Plaintiff as a "dinosaur."  (See Deposition of Ronald Hollingsworth, 13:1 & 15:9, attached as Exhibit 4 to Defendants' Motion for Summary Judgment.)  Plaintiff, however, does not indicate when these two remarks were related to him, or

---

Cont.
    unit head. I informed her of the hostel (sic) work environment, the constant threats, the violent attacks and the degradation. I explained how this behavior has affected me and that I find it difficult, if not impossible to do my job. She told me that she was concerned and assured me that these things will stop. The next day I again had to speak to Ms. Krueger and inform her that the abuse is still going on. Present at this meeting were both Supervisor 67 G. Morrow and TBA M. Purello. To this day, No (sic) actions have been taken to stop the abuses.

10/11/04:    I spoke to assistant Manager Ms. T. Tesler, along with M. Purello, about individuals accusing me of mistakes made by others. I told her about Supervisor 65 B. Thomas's violent slamming of the desk when a person approached the window at a time when I had two phones to my ear and was handling the radio and opening all the ramps with my back to the window. He almost caused me a heart attack or a nervous breakdown.

10/20/04:    TBA Gary Magda told me too (sic) "Look Out, some of the TBAs are out to get you!" I immediately recorded the time and date. TBA Gary Magda indicated that he was telling me this information, but did not want to get involved. I told him not to worry.

2/2/05:    On February 2, 2005 I went to see the GWB Manager, Mr. Durando, along with Ms. Tesler the Assistant Manager and Mr. Gomez the Union representative. The reason for my visit was to try to find out why my health care benefits were being carried by United Health Care rather than being carried by IOD (Injured on Duty pay) since the reason for me being out of work, on medical leave authorized by my primary care doctor, was related to my decline in health due to the abuses at work. When we confronted Durando with the question, he aggressively leaned over his desk and screamed, "Why don't you just return to work!"

how those two isolated comments constitute actionable discrimination under the NJLAD. See West, 45 F.3d at 755; cf. Waggoner v. City of Garland, 987 F.2d 1160, 1166 (5th Cir. 1993) (finding comments that a younger person could do faster work, and that plaintiff was an "old fart" were "stray remarks" insufficient to raise a genuine issue as to a material fact to avoid summary judgment).

The continuing violation doctrine is unavailable here. Plaintiff does not proffer one specific instance of age or disability discrimination within the statute of limitations period. Moreover, Hollingsworth puts forth no evidence that Defendants' alleged discriminatory conduct was "more than the occurrence of isolated or sporadic acts." See West, 45 F.3d at 755. Plaintiff's discrimination claims under the NJLAD are, thus, time barred. Defendants are entitled to summary judgment as to those claims.

    ii.    *The Port Authority and the NJLAD*

In addition to being untimely, Plaintiff's cause of action against the Port Authority is improperly asserted under the NJLAD. New Jersey and New York's bi-state Compact prohibits one state from unilaterally imposing duties on the Port Authority, unless the sister state concurs in an act of legislation. See N.J. Stat. Ann. § 32:1-8. Thus, the "[NJ]LAD may only be applied to the Port Authority if New York has concurrently adopted the same legislation [as New Jersey,] or if the states have similar legislation which purport to apply to the Port Authority. Since neither of these situations is present, [NJ]LAD may not be applied to the Port Authority." King, 909 F. Supp. at 945.

Although New York's Human Rights Law is "substantively similar" to NJLAD, id. at 946, it does not purport to apply to the Port Authority:

> The absence from the text and legislative history of [New York's] Human Rights Law and [NJ]LAD of any mention of [the Port Authority], in addition to the absence of an express statement by either state legislature that it was amending or supplementing the provisions of the Compact and that the law would take effect upon the enactment of identical legislation in the opposite state, seems to indicate that neither New York nor New Jersey legislatures intended the laws to apply to the internal operations of [the Port Authority].

Settecase v. Port Auth. of N.Y. and N.J., 13 F. Supp. 2d 530, 535 (S.D.N.Y. 1998) (citing Baron v. Port Auth. of N.Y. and N.J., 968 F. Supp. 924, 929 (S.D.N.Y. 1997)).

**B.      Intentional Infliction of Emotional Distress[6]**

Embodied in each count of the Complaint, Plaintiff alleges a common law cause of action for intentional infliction of emotional distress against the individual defendants.[7] In New Jersey,

---

[6] Counts I and II collectively charge the individual defendants with intentional infliction of emotional distress, while the remaining counts charge each defendant separately. Plaintiff notes that he has not pled a cause of action for negligent infliction of emotional distress in this action. (See Pl. Opp. Br,. at 3.)

[7] At various points in their submissions, Defendants argue that Plaintiff's intentional infliction of emotional distress claim is asserted under the NJLAD. As a result, Defendants argue, Plaintiff's emotional distress claim must necessarily fail for the same reasons as Plaintiff's NJLAD discriminations claims. This Court presumes that Defendants are acting under a flawed assumption that a common law emotional distress claim is preempted by the NJLAD remedy in this case.

The NJLAD provides plaintiffs with all remedies available in common law tort actions. See N.J. Stat. Ann. § 10:5-3; Catalane v. Gilian Instrument Corp., 638 A.2d 1341, 1349 (N.J. Super. Ct. App. Div. 1994) ("Our Legislature has declared the remedies available under the LAD and ... have expressed the view that ... the statute should be read broadly enough to encompass those claims and damages previously available at common law"); see also Tarr v. Ciasulli, 853 A.2d 92, 925 (N.J. 2004). The exclusivity of the NJLAD remedies thus preempts any common law claims stemming from the same factual predicate. Toscano v. Borough of Lavallette, No. 04-4412, 2006 WL 1867197, at *9 (D.N.J. June 30, 2006) ("A supplementary cause of action is not allowed when the NJLAD provides a remedy for the wrong").

Plaintiff's pleadings, however, state an independent common law claim for intentional infliction of emotional distress. ("That during the course of the plaintiff's employment [defendants] did conduct repeated personal attacks upon the plaintiff including physical and mental abuse ... That the conduct of the individual defendants constituted Intentional Infliction of Emotional Distress upon the plaintiff." (Compl. Count I, ¶ ¶ 6,9.)) The pleadings may not have

a plaintiff claiming intentional infliction of emotional distress must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Buckley v. Trenton Sav. Fund Soc., 544 A.2d 857, 863 (N.J. 1988). Specifically, a plaintiff must prove conduct by the defendant "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 544 A.2d at 863 (quoting Restatement (Second) of Torts § 46, comment d). The act must have been intentional and with the purpose of causing the emotional distress, or in deliberate disregard of a high probability that emotional distress will follow. Id. Finally, the distress must be "so severe that no reasonable man could be expected to endure it." Id. (quoting Restatement (Second) of Torts § 46, comment j.)

Analysis of intentional infliction of emotional distress claims raise issues of both law and fact. See id. at 864. Before submitting such a claim to the jury, this Court must first determine whether reasonable minds could conclude that the alleged conduct has met this standard. See id. Like claims arising under the NJLAD, claims for common law intentional infliction of emotional

---

Cont.

 sufficiently segregated Plaintiff's NJLAD and intentional infliction of emotional distress claims. That is, the Complaint does not identify the diverse set of facts, through which Plaintiff could properly have brought both claims simultaneously. Defendants, however, never moved to dismiss on this basis. Cf. Quarles v. Lowe's Home Ctr., No. 04-5746, 2006 WL 1098050, at *4 (D.N.J. March 31, 2006) (dismissing plaintiff's claim for intentional infliction of emotional distress because it was "based on the same allegations supporting [p]laintiff's LAD claim").

With much more than the Complaint before this Court, however, Defendants cannot now effectively ask for a dismissal of Plaintiff's emotional distress claim because of an inartful pleading. At this summary judgment stage, the Court has reviewed the record and finds that Plaintiff's emotional distress claims do not, and cannot, stem from the same set of operative facts as his NJLAD claims. The reason for this is simple and has been examined: there are no facts supporting Plaintiff's NJLAD claims. Rather, when viewed in the light most favorable to Plaintiff, the collective facts only refer to his claim for intentional infliction of emotional distress.

distress have a two-year statute of limitations in New Jersey and are subject to the same continuing violations doctrine.  N.J. Stat. Ann. § 2A:14-2 ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued."); see Hardwicke v. American Boychoir School, 902 A.2d 900, 909 (N.J. 2006) (noting that claims for intentional infliction of emotional distress are subject to a two year statute of limitations); Sgro v. Bloomberg L.P., No. 05-731, 2008 WL 918491 (D.N.J. 2008) (citing Wilson, 729 A.2d at 1010) (noting that New Jersey recognizes the continuing violations doctrine in intentional infliction of emotional distress cases).

In the instant action, Plaintiff testified that he was the victim of verbal attacks by fellow Port Authority employees.  Plaintiff also testified that these attacks caused him to experience emotional distress and heart trouble (although physicians failed to substantiate Plaintiff's complained of physical symptoms).  Hollingsworth, however, fails to specify what was said to him, or otherwise put forth any evidence explaining these alleged verbal attacks.  Cf.  Taylor v. Metzger, 706 A.2d 685 (N.J. 1998) (reversing the lower court and remanding for trial where plaintiff alleged emotional distress following the utterance of a single, yet *specific*, racial epithet); Flizack v. Good News Home For Women, Inc., 787 A.2d 228 (N.J. Super. Ct. App. Div. 2001) (reversing lower court and remanding for trial where plaintiff alleged supervisor made specific remarks about plaintiff's body and inappropriately touched plaintiff); Kwiatkowski v. Merrill Lynch, 2008 WL 3875417 (N.J. Super. Ct. App. Div. 2008) (reversing dismissal of intentional infliction of emotional distress claim where plaintiff alleged that colleague called plaintiff a "fag"); Poiner v. Middlesex, 2007 WL 1627033 (N.J. Super. Ct. App. Div. 2007)

13

(reversing the lower court where plaintiff alleged, *inter alia*, that colleague made specific sexual comments and propositioned plaintiff for sex).

In each of these cases, all of which Plaintiff cites in his submission to this Court, the successful plaintiffs alleged a specific comment or comments that caused severe emotional distress. Plaintiff's complete failure to specify the substance of at least one timely comment lies in stark contrast to the specific factual showings made by the aforementioned plaintiffs. At the summary judgment stage, Plaintiff cannot merely rest on his pleading, but rather, when challenged he must make some showing that there is a genuine issue as to a material fact. Plaintiff has failed to do so here. Defendants are, thus, entitled to summary judgment as to Plaintiff's claim for intentional infliction of emotional distress.

### C. Tortious Interference with Prospective Economic Advantage

Count II (as to the Port Authority) and Counts III through VII (as to the individual defendants) of Plaintiff's Complaint also allege tortious interference with prospective economic advantage. Like Plaintiff's claims for intentional infliction of emotional distress, the allegations of tortious interference with prospective economic advantage are somewhat buried within each Count, and may not be particularly obvious upon even a careful reading of the Complaint. Nonetheless, Plaintiff has pled such claims. Defendants, however, have failed to move for summary judgment on, or even mention, Plaintiff's claim for tortious interference with prospective economic advantage. This Court will not take it upon itself to examine the merits of Plaintiff's claim *sua sponte*, where Defendants have not first attempted to demonstrate its failings. For this reason alone, this Court must deny Defendants' prayer "that the Court dismiss the Complaint and grant Summary Judgment on behalf of all Defendants." (Def. Moving Br., p.

40.)[8]

## V. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, pursuant to FED. R. CIV. P. 56, is denied as to Plaintiff's claims for tortious interference with prospective economic advantage; and is granted as to 1) Plaintiff's claims for intentional infliction of emotional distress; 2) and Plaintiff's claims averring age and disability discrimination under the NJLAD.

Date: June 15, 2009

                                             S/Joseph A. Greenaway, Jr.
                                             JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[8]Moreover, the appropriate relief on a motion for summary judgment is merely the grant or denial of the motion, not the dismissal, with or without prejudice, of the Complaint. <u>Cheminor Drugs, Ltd. v. Ethyl Corp.</u>, 168 F.3d 119, 121 n.2 (3d Cir. 1999).